The opinion of the Court was delivered by
GrLOVER, J.
To a want of jurisdiction suggested in the argument, it may be answered that no such objection was taken in the pleadings or in the Court below. (Varney vs. Vosch, 3 Hill, 239.) But if the objection be properly before us the reply would be conclusive, that the case does not involve any question *293 respecting tbe allowance and apportionment of salvage, and, exclusively witbin tbe admiralty jurisdiction. The amount of salvage and tbe average apportionment have already been settled by tbe Chamber of Commerce at tbe instance of tbe defendants’ testator, and since bis death, tbe sum awarded to John, as steward, has been paid to tbe defendants. If, therefore, they have received money to which they are not legally entitled and which ex equo et bono belongs to the plaintiff, an action for money had and received will lie to recover it back, and this is the plaintiff’s action. Because it may become necessary in the adjudication of a cáse in this Court to consider or apply principles of law which .have been settled by other tribunals, it does not follow that the latter alone have cognizance of the case. In actions on contracts of marine insurance, an objection to the jurisdiction of this court could not be maintained, because in settling questions of sea-worthiness arising in such actions, we look for aid to the decisions of Courts of Admiralty, claiming a concurrent jurisdiction. If, therefore, the want of jurisdiction had been brought to the notice of the Court, we do not perceive that the objection could have availed the defendants.
The motion to reverse the decree rendered by the Circuit Court raises the question, whether salvage awarded to a slave while under a contract for hire, belongs to the owner or the hirer.
During the continuance of such contracts, the hirer is clothed with the authority of the owner. He alone directs the labor of the slave, enforces obedience by proper discipline, and is exclusively entitled to the profits derived from' his services. His rights to this extent are established by the cases cited in support of the appeal, and it must be acknowledged that, without a distinct recognition of them, all the strong inducements which operate in the making of contracts for the hire of slaves would be wanting. ■ By the appellant’s argument the general rule is admitted, that what a slave earns *294 in the performance of those services which the hirer may lawfully require, under the terms of his contract, belongs to him; but cases involving the compensation awarded to salvors furnish, it is said, an exception.
Salvage service consists, not only of labor rendered voluntarily, but of the skill displayed and of the risk incurred by those who undertake it — and as an inducement to meet promptly, the hazards of such a service, the courts, actingupon principles of public policy, are prodigal in the compensation they bestow. A crew shipped to perform the duties usually required of mariners and apprentices in the navigation and preservation of the ship, are under no obligation imposed by their respective articles to incur the toils and dangers incident to wrecking, and such service is, therefore, said to be gratuitous and extraordinary, and the salvor is defined by Lord Stowell to be, “ a voluntary adventurer.” (The Neptune, 1 Hagg, 227.) If a seaman or apprentice should refuse to perform the service, obedience, could not be enforced either under the shipping articles, or articles of apprenticeship. But is the service of a slave either voluntarily or extraordinary, and can he be called a voluntary adventurer who discharges duties exacted by an express contract, and the performance of which may be commanded under the penalty of disobedience? Will a hired slave be influenced to incur great personal danger, which is one of the elements of salvage service, by the temptation of a reward which he cannot hope to enjoy ? Other distinctions may be found between agreements for the hire of slaves and shipping articles, and articles of apprenticeship. Salvage service is incident to the former but not to the latter; — is an ordinary service in the one case, and an extraordinary one in the other; is bestowed gratuitously by the mariner and apprentice, and is exacted from the hired slave by the command of his qualified owner.
Although contracts for salvage are not generally obligatory upon the owners of property saved ; yet a contract made by *295 tbe master of a sbip witb tbe mariners to perform all tbe duties that pertain to tbe business of wrecking, in consideration of stipulated wages, might be enforced, and would require service neither voluntary nor extraordinary; because to such employment salvage service would be incident; and in what respect does tbe plaintiffs agreement witb Capt. Magee differ from such a contract. When vessels were seen in imminent hazard, tbe General Clinch and her crew were usually employed to render assistance, which was known to tbe plaintiff when be hired John, and consequently, be was advertised that this was in tbe course of the ordinary business for which bis services were required. Unless it be conceded that tbe hiring was in reference to such service, (and on this admission the appellant’s argument rests,) tbe risk attending it would be assumed by tbe hirer, and consequently be would be entitled to salvage, which is tbe consideration awarded for tbe labor, risk and skill — cujus est jpericuhim, ejns esse debet commodum.
John was one of the agents employed by Captain Magee, subject to bis orders and compelled by contract to yield obedience in discharging- a duty required in tbe ordinary course of bis business-and although, when tbe apportionment of salvage is made, reference must be bad to each individual composing tbe crew, tbe amount awarded for John’s services belongs to Captain Magee, — not because be incurred tbe attendant risk, but because bis contract witb tbe plaintiff confers the right to receive it. Such a disposition of tbe salvage would add to tbe inducements which influence masters of vessels to undertake tbe performance of a dangerous service. If a steamer engaged in tbe coasting business, — as tbe General Clinch was, — be manned by hired slaves in whole or in part, and salvage earned by tbe crew should be awarded to tbe owners of tbe slaves, tbe temptation to incur risk would be withheld from him who alone if governed by cupidity, can command tbe performance of tbe duty. If tbe *296 danger to life is greater in this than in other employments, the owner can indemnify himself against the increased hazard by a stipulation for higher wages.
We do not perceive the analogy suggested between mariners and apprentices and hired slaves in respect to the compensation bestowed for salvage. The reward is offered to encourage personal labor and risk, and is distributed per capita among the adventurers, which distribution cannot efn-brace one who neither voluntarily incurs the danger, nor personally enjoys the compensation. As the service consists of different elements, it is argued that the actual value of the time and labor should be awarded to the hirer and the estimated value of the risk to the owner ; but this is inconsistent with the apportionment made among mariners and apprentices, who are entitled to the consideration given for the whole service and not for a part. If the hirer is entitled to the fruits of so much of the service as consists of labor, his right must rest on the terms of the contract which secure to him the earnings derived from the undivided service.
The only case to which we have been referred, in which salvage was awarded to a slave, is Mason et al. vs. The Blaireau, (2 Cranch, 240.) The amount allowed was directed to be retained for the owner of the slave, who was then resident abroad, and it does not appear that any other claim was interposed. The conflicting rights of owner and hirer were not discussed nor adjudicated. It may be that the slave was a mariner shipped for the voyage under shipping articles, or that some contract was made stipulating for a disposition of the salvage. It is enough, however, that the question raised here was not submitted to the Court nor was it decided.
The consideration which leads a majority of the Court to sustain the judgment below is, that it is consistent with the agreement of the parties, construed according to those rules which regulate contracts usually entered into for the hire of slaves, and as distinguished from shipping articles. If John *297 was employed in a dangerous service and contrary to tbe terms of tbe hiring, it is admitted that tbe salvage awarded belongs to tbe hirer, because be assumed tbe risk and undertook to answer for tbe consequences of such service. If tbe service was authorized by tbe contract, then it would also belong to him, because it was incident to an employment for which the contract provides.
Tbe motion to reverse tbe decree is therefore dismissed.
WhitNBR and Mujstro, JJ., concurred.